UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW MITCHELL,

            Plaintiff,                                 Hon. Janet T. Neff

v.                                             Case No. 1:18-cv-425

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.
_____/

## REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.   Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

       The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.   *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).   The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

-2-

**PROCEDURAL POSTURE**

Plaintiff was 22 years of age on his alleged disability onset date.  (PageID.208). He successfully completed high school and worked previously as a fast food cook and construction worker.  (PageID.79).  Plaintiff applied for benefits on July 14, 2014, alleging that he had been disabled since March 11, 2011, due to a back injury and injured feet.  (PageID.208-20, 236).

Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (PageID.130-206).  On December 20, 2016, Plaintiff appeared before ALJ Nicholas Ohanesian, with testimony being offered by Plaintiff and a vocational expert.  (PageID.86-121)  In a written decision dated February 16, 2017, the ALJ determined that Plaintiff was not disabled.  (PageID.67-81).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.48-52).  Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2016.  (Tr. 69); *see also*, 42 U.S.C. § 423(c)(1).  Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status.  *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can

---

[1]. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

-3-

make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.   While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease status post spinal fusion and status post burst fracture; (2) kyphotic deformity; and (3) status post

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

open reduction internal fixation bilateral calcaneus fractures, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (PageID.69-72).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) he can occasionally balance, stoop, kneel, crouch, and crawl; (3) he can tolerate frequent exposure to extreme cold and vibration; (4) he must use a handheld assistive device at all times while standing where the contralateral upper extremity is available for use lifting and carrying objects up to the limits of sedentary work; and (5) he must have the opportunity to alternate between sitting and standing every hour for 1-2 minutes each time.   (PageID.72).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.   While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).   This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there

-5-

exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.   Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 950,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.   (PageID.111-19).   This represents a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## I.        Medical Evidence

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained almost 300 pages of medical treatment records and statements by Plaintiff.   The ALJ described this evidence as follows:

> The records show in March 2011, the claimant fell 18 feet off a roof and sustained severe fractures to the lumbar spine and ankles (Exhibit 6F). A CT scan of the lumbar spine showed a severe burst fracture of L3 with retropulsion of comminuted fragments into the spinal canal with severe canal narrowing (Exhibits 1F/78). Cervical and thoracic spine diagnostic imaging were negative (Exhibit 1F/71-72). CT scan of the ankles showed severely comminuted bilateral calcaneal fractures (Exhibit 1F/75-77).
>
> As a result, the claimant underwent retroperitoneal exposure L1-L3, discectomy L2-L3, L3-L4, corpectomy L3 and placement of hardware and fusion at T12-L4 and L2-L4 performed by Yousif Hamati, M.D. and Mark Moulton, M.D. (Exhibit 1F/67-70). A few days later, the claimant underwent open reduction internal fixation for bilateral calcaneus fractures, performed by Jeffery Anhalt, D.O. and Dr. Hamati (Exhibit 1F/64-65).
>
> Follow up visits later in the month through May 2011 noted the x-rays of the lumbar spine showed excellent alignment and good healing (Exhibit 1F/58-61). Likewise, x-rays of the bilateral heels showed good position of the bilateral calcaneal fractures reduced

with no evidence of hardware failure or loosening. On examination, his pedal pulses were palpable bilaterally, he had good range of motion, he demonstrated appropriate heel valgus when standing, his wound was healed and he had minimal pain. The claimant was to continue with physical therapy (Exhibit 1F/56, 59; 7F). By July 2011, the record noted the claimant reported no pain, his feet were doing great and he felt like he was back to normal, he was walking with no problems (Exhibit 1F/54). In December 2011, the claimant reported that things were going well. His feet hurt occasionally but not bad (Exhibit 1F/46-47).

In February 2012, the claimant underwent removal of the top four screws and part of the rod. (Exhibit 1F/42-43). Records through July 2012, noted the claimant continued to report some lumbar spine pain symptoms and functional difficulties (Exhibit 1F/31-37). September x-rays noted the claimant had a segmental collapse above where the screws were removed. The claimant was diagnosed with scoliosis/kyphosis (Exhibit 1F/23-24). Dr. Hamati recommended continued therapy (Exhibit 1F/23). Later, Dr. Hamati indicated they would extend the claimant's fusion to try to correct the kyphotic deformity (Exhibit 1F/21).

In February 2013, the claimant underwent extension of the fusion to T12, removal of setscrews between L2, L3, L4 and bilateral posterolateral fusion from T12-L2 with osteotomy at the junction of the fusion (Exhibit 1F/19-20; 2F/3-6, 8-9). March 2013 x-rays showed good alignment (Exhibit 1F/16). Subsequently, the claimant reported some difficulties with his left leg. The examination showed only some generalized weakness. The claimant was prescribed physical therapy (Exhibit 1F/12; 8F). The EMG of the left lower extremity was normal (Exhibit 1F/11). In September 2013, Dr. Hamati indicated the claimant was at maximum medical improvement and recommend outpatient physical therapy on his own and that water therapy may be beneficial (Exhibit 1F/9). X-rays showed good alignment and the screws were well-seated (Exhibit 1F/6). Dr. Hamati prescribed vocational rehabilitation (Exhibit 1F/4).

Dr. Anhalt noted in September 2013, the claimant had increased ankle pain with activity. The claimant was treating with pain medications (Exhibit 1F/7-8). April 2014 records noted the claimant was doing reasonably well, he had no edema and had good motion of this subtalar joints only restricted to less than 10 degrees. The claimant was to follow up in a year. Dr. Anhalt recommended stable shoes with a shoehorn, for added support (Exhibit 1F/1).

By February 2014, the record noted the claimant was getting strength in his lower extremities and he was neurologically intact (Exhibit 1F/3). In June 2014 Ramona Wallace, D.O., the claimant's primary care physician, noted the claimant had completed physical therapy and case management. His pain was noted as fair, with minimal change. His prescribed pain medications were noted to be working well (Exhibit 3F/1). X-rays of the lumbar spine demonstrated excellent alignment (Exhibit 4F). Moreover, October 2014 records noted the claimant reported some pain symptom relief with pain medications. He was instructed to use Ultram sparingly and continue with rehabilitation. Muscle spasms were noted on examination, but no other significant clinical findings were noted Exhibit 5F/3-5). Dr. Hamati noted in December 2014, the claimant was doing well neurologically (Exhibit 4F).

Subsequent records through July 2015 from Dr. Anhalt noted the claimant was doing reasonably well, he continued to ambulate with a cane. He reported some soreness in his feet and ankles if he was on them for a period of time, but nothing significant. The examination of his bilateral feet was mostly normal. He had good eversion and inversion to the hindfoot, his incisions remained well healed, ankle range of motion was excellent and subtalar range of motion was still almost none. Dr. Anhalt discharged the claimant as there was no need to see him on a regular basis (Exhibit 12F/1-2).

Additional records through December 2015 from Dr. Hamati, noted the claimant was doing fairly well on follow up for his status post corpectomy and fusion. Alignment was good on x- rays. There was a little loss of lordosis noted, but his screws were well seated and his bone in front of the cage was nicely healed. It was recommended the claimant follow up in a year (Exhibit 10/F; 13F/1). In February 2016 Jason Kinney, D.O., noted the claimant's back pain was stable on pain medications. The claimant reported the medications allowed for some functioning (Exhibit 14F/1-3).

In June 2016, the claimant participated in an independent medical evaluation. Largely normal findings were noted by David Frye, D.O., as he observed the claimant was in no apparent physical distress, he moved about the examination room without hesitancy or difficulties and no reliance on the cane. The claimant's examination was mostly normal. On range of motion he had some decreased side bending and extension, but had no reported pain with thoracolumbar motion, motor strength was good, there was no focal lower extremity weakness, straight leg raising was negative, sensation was intact and there was no lower extremity edema. In the ankle, the

-8-

plantar surfaces were nontender, there was no pain in palpation, dorsiflexion was 10 degrees, plantarflexion was 35 degrees, subtalar eversion was zero degrees and subtalar inversion was 10 degrees all bilaterally. Dr. Frye noted the hindfoot was stable with negative drawer, lateral tilt and external rotation stress. Diagnostic imaging showed the lumbar spine had a solid fusion, L4 and L5 disc spaces were preserved and the implants were stable. Likewise, the left and right calcaneous fractures were healed with normal alignment, hardware was intact and there was no posttraumatic subtalar degenerative changes (Exhibit 15F/7).

Dr. Kinney noted in an August 2016 examination, the claimant's motor strength and tone were normal, his joints, bones and muscles had normal movements, he had no edema in his extremities and his gait and station were normal. The claimant's treatment remained conservative with medications (Exhibit 16F). Similarly, in December 2016, Dr. Hamati noted the claimant was neurologically intact. He was walking well without any major complicating factors and x-rays did not show any loose screws, rods or the cage. Dr. Hamati, indicated the claimant seemed to be doing well (Exhibit 19F).

In December 2016, the claimant underwent a vocational rehabilitation with Paul Delmar, Ph.D. The claimant reported he suffered from back and feet pain. He indicated his feet limited his ability to walk. He reported exertional limitations of lifting a gallon of milk. He could sit in a regular chair for about an hour and a half and then he must get up and move around and lay down. He indicated that with a sit-stand option he would need to lie down at some point during the day. Moreover, the claimant reported if he must stand in one place, he could do so for about 10 minutes and could walk 15-20 minutes in a trip but then he needed to sit down. No specific findings were noted by Dr. Delmar, as he did not perform an examination and largely just restated the claimant's complaints (Exhibit 18F).

(PageID.73-75).

## II.    Medical Opinion Evidence

As detailed below, several of Plaintiff's treating physicians offered opinions that Plaintiff was impaired to a greater extent than the ALJ recognized in his RFC assessment.   The ALJ, however, afforded only limited weight to these varying opinions.   Plaintiff argues that he is

entitled to relief on the ground that the ALJ's rationale for discounting his treating physician's opinions is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such.  *Id.* at 376.  In doing so, the ALJ considers the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.  *Id.* (citing 20 C.F.R. § 404.1527).  While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment.  *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

On September 24, 2014, Dr. Wallace reported that during an 8-hour workday, Plaintiff could sit and stand/walk for only "about 2 hours" each.  (PageID.572).  The doctor reported that Plaintiff required a sit-stand option that afforded him the opportunity to walk for 10 minutes every 20 minutes.  (PageID.572-73).  The doctor also reported that Plaintiff could only occasionally lift any weight.  (PageID.573).  On May 7, 2013, Dr. Hamati reported that Plaintiff

"cannot sit too long, stand too long, etc." and "has to lay down as needed."  (PageID.345).   On October 24, 2013, the doctor reported that Plaintiff was limited to "no lifting over 10 pounds, stooping or twisting."  (PageID.335).   On June 18, 2015, Dr. Hamati stated, "as far as I am concerned, no lifting, no bending, no stooping, no twisting."  (PageID.575).   On July 1, 2015, Dr. Anhalt reported that Plaintiff required a job with "no lifting" and "maximum standing periods of 10 minutes."  (PageID.579).

As noted above, the ALJ articulated a very restrictive RFC for Plaintiff.   To the extent Plaintiff's care providers asserted that Plaintiff was even more limited, the ALJ properly discounted such.   As the ALJ's detailed discussion of the medical evidence reveals, the opinions in question were simply inconsistent with the medical evidence.   In sum, the ALJ articulated good reasons, supported by substantial evidence, for discounting the opinions in question. Accordingly, this argument is rejected.

Plaintiff also challenges the ALJ's decision to afford only limited weight to the opinion, expressed by his father, that Plaintiff "can't walk or stand for more than 20 minutes" and cannot perform any bending, twisting, or stooping.  (PageID.266-73).   The ALJ's decision to afford only limited weight to this opinion is supported by substantial evidence.  *See, e.g., Mullins v. Commissioner of Social Security*, 2015 WL 3441163 at *13 (E.D. Mich., May 28, 2015) ("the ALJ is not required to give any perceptible weight to lay opinion testimony that does not comport with the medical evidence").   Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

-12-

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: December 20, 2018

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge